Plaintiff has requested interlocutory review of the trial judge’s order of June 24, 1982, in which the trial judge denied plaintiffs motion to lift the stay on the case and also issued other instructions for the further conduct of the case. We grant review pursuant to Rule 53(c)(2)[1] and affirm the trial judge.
This case involves the alleged taking of plaintiffs coal-mining rights in the Otter Creek Wilderness Area ( ocwa) by the operation of the Surface Mining Control and Reclamation Act of 1977 ( smcra), 30 U.S.C. §§ 1201 et seq. (Supp. II 1978), the Wilderness Act of 1964, 16 U.S.C. §§ 1131 et seq. (1976), and the Eastern Wilderness Act of 1975, Pub. L. No. 93-622, 88 Stat. 2096. In the court’s order *879 of June 20, 1980, 224 Ct.Cl. 697, we rejected plaintiffs claim that these acts constituted a pure legislative taking and we held that the Secretaries of Agriculture (through the United States Forest Service (usfs)) and of the Interior (through the Office of Surface Mining & Reclamation (osm)) could under certain circumstances allow mining in ocwa. This interpretation of the smcra was subsequently confirmed by Hodel v. Virginia Surface Mining & Reclamation Ass’n, 452 U.S. 264, 295-97 (1981), and Hodel v. Indiana, 452 U.S. 314, 333-35 (1981). We also held that plaintiff had to receive a definitive denial of permission to mine before it could proceed with its taking case. See Agins v. City of Tiburon, 447 U.S. 255, 260-63 (1980); Virginia Surface Mining, 452 U.S. at 295-96; Indiana, 452 U.S. at 334-35. Consequently, we stayed action on the case (while retaining jurisdiction to prevent a statute of limitations bar), ordered plaintiff to apply to usfs and osm for permission to mine, and ordered usfs and osm to reach a definitive decision on the application within 1 year after the filing by plaintiff. We also emphasized our concern that plaintiffs case be handled expeditiously.
Plaintiff did submit applications and a lengthy process of negotiation began. Plaintiff now asks the court to lift the stay because, plaintiff argues, while a final decision has not been issued, usfs and osm have expressed their negative views on plaintiffs application sufficiently to make further pursuit of administrative permission to mine pointless. Defendant argues that plaintiff has consistently refused to cooperate in achieving a plan acceptable to usfs or osm and that plaintiff has failed to seek a determination that it had "valid existing rights” within the meaning of smcra, 30 U.S.C. § 1272(e), which would make considerably easier its attempts to get permission to mine.
The reason for this stalemate is, as the trial judge noted, that a role reversal has taken place. Plaintiff, to pursue its taking cause of action, must first be denied permission to mine by osm and usfs. Agins, supra; Virginia Surface Mining, supra; Indiana, supra; Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978). Defendant, on the other hand, not only has the usual motivation for avoiding taking *880 liability but is also under virtual statutory command to avoid it,[2] and so is looking for ways to permit mining. Plaintiff, consequently, has not pursued a permit as exhaustively as might otherwise be the case, and defendant has refused to deny permission on the basis of applications which it would otherwise reject. The trial judge by and large saw no easy way out of this dilemma other than to restate our instruction to the parties to cooperate in reaching a final decision, and we must agree.
However, we wish to clarify the way in which we expect the case to proceed from here under the terms of the trial judge’s order. First, plaintiff should make its "last best offer” to defendant, in good faith, taking into consideration the feasibility material that defendant has produced. Defendant should then promptly and definitely act upon that application, and on that alone. There is to be no further effort to negotiate a mutually acceptable plan. If defendant denies the application, as seems likely, we emphasize that the denial will not be conclusive of the taking claim. Defendant is still entitled to prove in this court that there is a feasible way to mine coal within the restrictions of its regulations. If the court agrees, then plaintiff will be left at that point without a permit, without a judgment, and barred by the statute of limitations. We assume that this will be an incentive for plaintiff to make its best efforts to arrive at a mutually acceptable plan. On the other hand, defendant must stand by any plan it offers to the court and permit mining if plaintiff decides to use it. We do not claim that this is a particularly elegant solution to the role reversal problem, but it will have to do. The terms of the trial judge’s order need not be altered to accommodate the understanding outlined here.
The second issue before us involves plaintiffs failure to pursue its "valid existing rights” under the smrca. As noted, plaintiff has little incentive to do so and has freely admitted that it fails to satisfy the "all permits” test in the regulations adopted in 1979. 30 C.F.R. § 761.5 (1981); 44 Fed. *881 Reg. 14991-92, 15342 (Mar. 13, 1979). It would be pointless therefore, plaintiff claims, to pursue the issue. However, the current status of the regulatory definition of "valid existing rights” is very much up in the air. The regulations have been remanded as too restrictive in light of the congressional intent to avoid takings, In re Permanent Surface Mining Regulation Litigation, Civ. No. 79-1144 (D.D.C. Feb. 26, 1980), aff’d 653 F.2d 514, cert. denied, sub nom. Peabody Coal Co. v. Watt, 454 U.S. 822 (1981); see also Virginia Surface Mining, 452 U.S. at 296 n.37, and OSM has promulgated proposed changes in the definition. 47 Fed. Reg. 25279-82, 25296-97 (June 10,1982). One or more of the three options proposed by osm may well include plaintiffs situation. Thus, the existence of "valid existing rights” is hardly foreclosed to plaintiff. While plaintiff cannot be faulted for not pursuing its valid existing rights earlier, there is no reason not to pursue them now. We therefore also concur in the trial judge’s order along these lines.
We again urge expedition. It is in plaintiffs interest to proceed speedily, so we do not impose a time limit on it. It may be preferable for the parties to wait for the final regulations to be promulgated, but we leave the conduct of the case up to the trial judge, whom we again instruct to monitor the situation closely to avoid further unnecessary delay.
it is therefore ordered, after careful consideration of the parties’ submissions and without oral argument, that plaintiffs suggestion for oral argument is denied without prejudice to a later request, plaintiffs motion for review is granted, and we affirm the trial judge’s order, subject to the understandings outlined above.
September 24,1982

 While defendant points out that plaintiff failed to include all of the required papers, we decline to deny the request on that basis.

 The legislative history of smcra makes it plain that Congress intended to avoid takings in passing the act. 123 Cong. Rec. 12878 (Apr. 29, 1977) (remarks of Rep. Udall). Accord Hodel v. Virginia Surface Mining & Reclamation Ass’n, 452 U.S. 264, 296 n.37 (1981).